IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY ARCEO,

    Plaintiff,                                No. CIV S-00-0057 GEB GGH P

   vs.

CAL TERHUNE, et al.,

    Defendants.                          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        On November 23, 2004, this action was dismissed by stipulation without prejudice pursuant to the settlement agreement entered by the parties on that date. The terms of the settlement were that plaintiff would receive monetary compensation and that certain entries in plaintiff's central and medical files would be corrected. In addition, the parties agreed that plaintiff would be provided with his prosthetic arm:

> As part of this settlement, CDC and Defendant also agree to provide Plaintiff with the prosthetic arm which is the subject of this litigation for use during his commitment to the California Department of Corrections. Plaintiff agrees that the prosthesis is not to be misused or used in a manner other than for its intended purpose. The prosthetic arm will be delivered to Plaintiff within thirty days upon his return from out-to-court status to the California State Prison, Los Angeles County, in Lancaster, California.

Exhibit B, Defendants' April 1, 2005, Points and Authorities.

/////

On February 11, 2005, plaintiff filed a motion alleging breach of the settlement agreement. Plaintiff claimed that he received his "hook" prosthesis more than thirty days after his return to Lancaster, and that prison officials were requiring him to wear it whenever he left his cell. Plaintiff also claimed that prison officials were going to force him to wear a new prosthesis that did not contain a hook. Plaintiff stated that he needed the hook in order to exercise. Plaintiff also complained that he had not been provided with socks or rubber bands, which were needed to make his prosthesis fit comfortably.

On February 17, 2005, the court ordered defendants to file a response to plaintiff's motion alleging breach of the settlement agreement. On February 17, 2005, plaintiff filed a petition for writ of mandate containing further briefing in support of his motion. In this petition, plaintiff reiterated his claims that prison officials were going to force him to wear a prosthesis without a hook and that he was required to wear his prosthesis whenever he left his cell.

On April 1, 2005, defendants filed an opposition to plaintiff's motion. In her declaration attached to the opposition, counsel addressed plaintiff's claims:

> 9. Plaintiff was returned to California State Prison in Lancaster on December 9, 2004. (Exhibit E, CDC 112, Chronological History).
>
> *****
>
> 11. On January 10, 2005, I was contacted by Plaintiff's mother, Mrs. Arceo. Mrs. Arceo informed me that Plaintiff had not received his prosthesis and wanted me to look into the matter. I immediately contacted the prison. I was advised that the reason Plaintiff had not received his prosthesis was because the prosthesis was delivered to Associate Warden Sullivan on December 9, 2004. The orthodics specialist visits the prison the first Wednesday of every month and by that date, he had already made his monthly visit. The orthodics specialist was scheduled to return to the prison on January 5, 2005, however, due to rain and flooding, he was unable to make it on that date.
>
> 12. It was necessary for Plaintiff to be seen by the orthodics specialist so that the specialist could properly fit him with the prosthesis prior to delivering it to him.
>
> 13. The orthodics specialist, Dr. Sullis, was rescheduled for January 12, 2005. Dr. Sullis saw Plaintiff on January 12, 2005. Plaintiff was fitted and the prosthesis was issued to him during that visit. Dr. Sullis' notes in Plaintiff's medical file indicate that plaintiff was seen for fitting of the left above the elbow prosthesis and was issued two hooks, one harness, and one socket. Dr. Sullis'

note also indicates that the prosthesis fit was a bit too tight but that Plaintiff was able to get into it. It was recommended to Plaintiff that he should return. (Exhibit F, Plaintiff's Medical Records reflecting he received his prosthesis on January 12, 2005).

14. On January 13, 2005, Dr. Sullis contacted me by telephone. Dr. Sullis advised me that he had seen Plaintiff on January 12th and issued him the prosthesis. Dr. Sullis expressed concern with the prosthesis due to the fact that it was made of metal parts and given the fact that Plaintiff is incarcerated. Dr. Sullis informed me that he could make a newer, more modern, prosthesis for Plaintiff which would be functional and made of hard plastic as opposed to metal like the one Plaintiff has now.

15. I told Dr. Sullis that if he believed such a prosthesis would be functionally equivalent to the one Plaintiff has, he could present Plaintiff with that alternative. I made it clear, however, that ultimately the decision would be Plaintiff's as to whether or not he wanted the alternative prosthesis or wanted to keep the one he has now.

16. I also made it clear to staff at the prison that Plaintiff would be allowed to possess the prosthesis he has now and that it was not to be confiscated. I reminded them that we have a settlement agreement that will not be violated. Staff agreed to follow my instructions.

17. I have been advised by staff at the prison that Plaintiff continues to have possession and use of his prosthesis and that there is no "plot" to have that prosthesis taken away. Staff were simply trying to accommodate Plaintiff and offer him what they believed to be a safer alternative, i.e. a new prosthesis with less metal components than the current one. Given the fact that Plaintiff is incarcerated, staff was simply trying to create a safe environment for Plaintiff, other inmates, and staff.

18. Plaintiff, however, declined to accept the alternative prosthesis and continues to have possession and use of his old prosthesis. There has been no attempt to force an alternative prosthesis on plaintiff.

19. On March 17, 2005, I spoke to the Medical Technical Assistant (MTA) Johnson who is in charge of scheduling the Orthodics Clinic on the first Wednesday of every month. Ms. Johnson advised me that Dr. Sullis had sleeves (socks) for Plaintiff's prosthesis. He was going to deliver the sleeves during the March 2nd visit to the prison and Plaintiff was scheduled to be seen by Dr. Sullis. Dr. Sullis, however, was unable to keep his appointments on that date and the clinic was canceled. Plaintiff is scheduled to be seen during the next scheduled visit in April.

Plaintiff alleges four breaches of the settlement agreement: 1) he did not receive his prosthesis within thirty days of his return to Lancaster; 2) he is required to wear the prosthesis whenever he leaves his cell; 3) prison officials are going to force him to wear a prosthesis that

does not contain a hook; and 4) he did not receive socks to wear with the prosthesis.

Plaintiff received his prosthesis thirty-five days after returning to Lancaster, rather than the thirty days provided by the settlement agreement. Reasonable delays in fulfilling the terms of a settlement agreement do not constitute breach. Sheehan v. Atlanta Intern. Ins. Co., 812 F.2d 465, 470 (9th Cir. 1987). This brief delay in plaintiff's receipt of his prosthesis was not unreasonable.

The settlement agreement did not address plaintiff's post-prosthesis acquisition activities. Therefore, prison officials are not breaching the agreement by requiring plaintiff to wear the prosthesis whenever he leaves his cell. If plaintiff wishes to contest this policy, he must file a civil rights action in the United States District Court for the Central District of California.

According to defense counsel, prison officials are not going to force plaintiff to wear a prosthesis that does not contain a hook. Therefore, this claim for breach of the settlement agreement is without merit. Defense counsel also represents that plaintiff will receive socks in April. The court is concerned by the delay in plaintiff's receipt of socks, which are apparently required for the prosthesis to fit comfortably. However, because plaintiff should have received the socks by April 6, 2005 (the first Wednesday of April when Dr. Sullis has his appointment), the court finds no breach. See Sheehan, supra.

On April 7, 2003, plaintiff filed supplemental briefing in support of his motion. Plaintiff alleges that prison officials retaliated against him for enforcing the terms of the settlement agreement by removing him from his job. This claim does not involve a term of the settlement agreement. If plaintiff wishes to contest his removal from his job, he should file a civil rights action in the United States District Court for the Southern District of California.

For the reasons discussed above, the court finds that plaintiff's motion alleging breach of the settlement agreement should be denied.

Finally, it appears that both parties may be confused regarding the proper remedy should the court find a breach of the settlement agreement. Title 28 U.S.C. § 3626(c)(2) of the

Prison Litigation Reform Act (PLRA) provides for the following remedies for breach of private settlement agreements:

> (2) Private settlement agreements.
> (A) Nothing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than reinstatement of the civil proceeding that the agreement settled.
> (B) Nothing in this section shall preclude any party claiming that a private settlement had been breached from seeking in State court any remedy under State law.

Were this court to find a breach of the settlement agreement, the remedy would most likely be reinstatement of this action.[1]

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's February 11, 2005, motion for breach of judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  4/20/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
arc57.57

---

[1] Were this action reinstated, the terms of the settlement would be dissolved and plaintiff would have to return the money received as a result of the settlement.